**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **MERAL SMITH,** )<br><br>    **Petitioner,** )<br>**v.** )<br> )<br>**RICK MULGRAVE, Director of the Virgin** )<br>**Islands Bureau of Corrections,** )<br> )<br>    **Respondent.** )<br>_____ ) | **Civil Action No. 2015-0078** |

**Appearances:**
**Meral Smith, Pro Se**

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER is before the Court on a Report and Recommendation ("R&R") issued by

Magistrate Judge George W. Cannon, Jr., (Dkt. No. 21), pursuant to an Order referring this matter

for the same (Dkt. No. 5). In his R&R, the Magistrate Judge recommends that Petitioner Meral

Smith's ("Smith") "Petition for Writ of Habeas Corpus" (the "Petition") (Dkt. No. 1) be denied.

For the reasons that follow, the Court will accept the Magistrate Judge's R&R, as modified herein,

and will dismiss Smith's Petition.

### I.       BACKGROUND

Petitioner Meral Smith was convicted of first-degree murder, first-degree assault and

robbery in 1973 for the shooting deaths of eight people and the wounding of four others at the

Fountain Valley Golf Course on St. Croix, Virgin Islands. He was sentenced immediately after his

conviction to eight consecutive life sentences for the murders and fifteen-year terms for the assault

and robbery counts. *See* Judgment and Commitment entered August 13, 1973; *see also Gov't of*

*V.I. v. Gereau*, 502 F.2d 914 n.1 (3d Cir. 1974). Smith was tried, convicted, and sentenced in the District Court for local crimes prosecuted on behalf of the Government of the Virgin Islands.

After Smith and his co-defendants were sentenced, they were sent to a correctional facility in Puerto Rico. *See United States ex rel. Gereau v. Henderson*, 526 F.2d 889, 892 (5th Cir. 1976). Shortly after, the Attorney General of the United States assumed custody over them pursuant to a contractual agreement between the United States and the Virgin Islands. *Id.* That agreement was entered pursuant to the provisions of 18 U.S.C. § 5003, which allows a state to contract with the Federal Bureau of Prisons ("BOP") to provide for the custody of state inmates.[1] The BOP held Smith in various locations until 2001 when it transferred him to the state of Virginia. (Dkt. No. 1 at 2). He remained detained in Virginia until 2009, when he was transferred back to the Virgin Islands. *Id.*

Smith initiated this action pursuant to 28 U.S.C. § 2241 on December 28, 2015, while he was incarcerated at the Golden Grove Adult Correctional Facility on St. Croix. Smith asserts that his continued detention "violates the Fifth, Sixth, Eight[h], Thirteenth, and Fourteenth amendments to the U.S. Constitution along with the first eleven Articles of the Universal Declaration of Human Rights." (Dkt No. 1 at 2). However, the gravamen of the claim in Smith's Petition is relatively narrow. He contends that "the United States relinquished jurisdiction" over him when the BOP discharged him from its custody in 2001, and he is therefore entitled to

---

[1] That statute provides, in relevant part, as follows:

> The Director of the Bureau of Prisons when proper and adequate facilities and personnel are available may contract with proper officials of a State or territory, for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or territory.

18 U.S.C. § 5003 (a)(1).

immediate release. *Id.*. The essence of Smith's claim is captured in this regard in his Statement of the Case:

> The petitioner was prosecuted, convicted, and sentenced by this Court, then turned over to the custody of the Federal Bureau of Prisons, which assigned him a federal prisoner number. The Petitioner had no detainers from either the state of Virginia, nor the Virgin Islands, had not been charged, tried, or convicted by either jurisdiction. Once the Federal government terminated its custody, the sentence also terminated, and no other jurisdiction had any lawful right to incarcerate him in relationship to the terminated sentence. Whether by administrative error or not, the Petitioner was and remains entitled to his immediate and unconditional release.

(Dkt. No. 1 at 1).

The Court referred the Petition to Magistrate Judge George W. Cannon, Jr. for an R&R. (Dkt. No. 5).[2] On January 17, 2018, the Magistrate Judge issued an R&R in which he recommended that the Petition be denied. (Dkt. No. 21). A copy of the Magistrate Judge's R&R was mailed to Smith via certified mail, return receipt requested. A return receipt signed by Smith was received indicating that the R&R was delivered to Smith on January 23, 2018 at the Central Arizona Florence Correctional Complex where he was incarcerated at the time the R&R was issued. (Dkt. Nos. 23, 25). An individual named Kwasi Seitu subsequently filed two letters—one dated February 24, 2019 and another dated March 8, 2018—in which he objected to the Magistrate Judge's R&R. (Dkt. Nos. 27, 28). Smith then seemingly filed objections to the Magistrate Judge's R&R on July 30, 2018 in a document styled "Motion For Immediate Release" ("Objections"). (Dkt. No. 29).[3]

---

[2] Petitions for a writ of habeas corpus fall within the scope of 28 U.S.C. § 636(b)(1)(B), which allows a district court to designate a matter to a magistrate judge to make proposed findings of fact and recommendations on the disposition of the matter. *Henry v. Smith*, 2017 WL 2957819, at *3 (E.D. Pa. July 10, 2017).

[3] Smith makes reference to Seitu in his Objections and appears to have adopted the arguments made in Seitu's second letter. Smith wrote in his Objections that he "adopts Mr. Kwasi Seitu, Ex-parte Reply document dated February 24, 2018 as his Response to said Magistrate Report and

## II.     APPLICABLE LEGAL PRINCIPLES

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.").

When a party makes a timely objection, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Where the parties fail to file timely objections, there is no statutory requirement that the district court review the R&R before accepting it. *Anderson v. United States*, 2019 WL 1125816, at *1 n.1 (M.D. Pa. Mar. 12, 2019) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). The Third Circuit has determined, however, that as a matter of good practice, district courts should "afford some level of review to dispositive legal issues" raised in an R&R under a plain error standard. *Nara v. Frank*, 488 F.3d 187, 196 (3d Cir. 2007), *as amended* (June 12, 2007) ("[P]lain error review is appropriate where a party fails to timely object to a magistrate judge's R&R."); *see also Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) ("While . . . [28 U.S.C. § 636(b)(1)] may not require, in the absence of objections, the district court to review the magistrate's report before accepting it, we believe that the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report."); *see also Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006), *aff'd*, 276 Fed. App'x 125 (3d Cir. 2008) (explaining that, by failing to object to a portion of a report and recommendation, the litigant

---

Recommendation in this motion and aver that he is entitled to his immediate Release as a matter of law."  (Dkt. No. 29 at 1-2).

"waived its right to have this Court conduct a *de novo* review," and that in those circumstances, "the scope of [the court's] review is far more limited and is conducted under the far more deferential standard of 'plain error'"). A plain error review involves a determination as to whether the R&R contains any "clear" or "obvious" error affecting the Petitioner's "substantial rights." *United States v. Olano*, 507 U.S. 725, 734 (1993) (explaining that to meet the definition of a "plain error," an error must have been both "obvious" and "prejudicial" in that it "affected the outcome of the district court proceedings").

### III.    DISCUSSION

#### A.    Standard of Review

Here, the Magistrate Judge issued his R&R on January 17, 2018, and the return receipt—signed by Smith—indicates that a copy of the R&R was delivered to Smith on January 23, 2018. Thus, the fourteen-day period for objections expired on February 6, 2018.[4] As such, Smith was required to file any objections on or before February 6, 2018.  The envelope containing Smith's objections was postmarked on July 24, 2018 and received by the Court on July 30, 2018. Accordingly, Smith's objections were submitted more than five months after the fourteen-day window closed, and thus were untimely.

Although Seitu's letters arrived much earlier than Smith's objections, they too were untimely. One was dated February 24, 2018, the other one was dated March 8, 2018, and they were both postmarked on March 9, 2018. Thus, in addition to the questionable nature of Seitu's standing

---

[4] Rule 6 of the Federal Rules of Civil Procedure provides that, when computing time periods stated in days, "the day of the event that triggers the period" is excluded.  Fed. R. Civ. P. 6(a)(1)(B). Further, the last day of the period is included in the count unless that day is a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

to file objections on Smith's behalf,[5] Seitu's letters were also submitted outside of the fourteen-day objections period.

Under the circumstances here, a plain error review of the R&R would be appropriate in view of the untimely objections. In any event, whether reviewed *de novo* or for plain error, and whether Seitu's and Smith's objections are considered or not, the Court's conclusion is the same—Smith's Petition for a Writ of Habeas Corpus fails.

**B.      Review of Petition**

The Magistrate Judge recommended that Smith's Petition be dismissed because it was filed pursuant to 28 U.S.C. § 2241 instead of 28 U.S.C. § 2254. (Dkt. No. 21 at 10). The Magistrate Judge further found that, even when considered under § 2254, a review on the merits results in the same recommendation of dismissal. *Id.*

**1.      Statutory Basis for Petition**

Pursuant to 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a *State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2254(a) (emphasis added). Under 28 U.S.C. § 2241, a federal court may issue a writ of habeas corpus to a

---

[5] Although federal law allows for a writ of habeas corpus by a third party on behalf of "the person for whose relief it is intended," *see* 22 U.S.C. § 2242, standing to raise such a claim for another is not automatic. *See Whitmore v. Arkansas*, 499 U.S. 149, 163 (1990). In order to establish standing, an individual must (1) "provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action" and (2) "be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Id.* at 163.  It would also bolster a case for standing if the individual had "some significant relationship" with the party on whose behalf the filing is made—who remains "the real party in interest." *Id.* at 164. Here, Seitu's filing fails to provide an "adequate explanation" for Smith's inability to respond to the R&R on his own behalf—especially in light of Smith's belated filing thereafter.

federal or state prisoner if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* Although seemingly similar, the Third Circuit has concluded that § 2254 is the appropriate statutory authority when state prisoners in custody pursuant to a state court judgment challenge the execution of their sentences. *See Coady v. Vaughn*, 251 F.3d 480, 484-85 (3d Cir. 2001) ("It is a well-established canon of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence over the more general one … In the instant action, both Sections 2241 and 2254 authorize Coady's challenge to the legality of his continued state custody … applying the 'specific governs the general' canon of statutory construction to this action, we hold that Coady must rely on Section 2254 in challenging the execution of his sentence."); s*ee also Felker v. Turpin*, 518 U.S. 651 (1996) ("Our authority to grant habeas relief to state prisoners is limited by § 2254, which specifies the conditions under which such relief may be granted to 'a person in custody pursuant to the judgment of a State court.'"); *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004) ("28 U.S.C. § 2254 is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction.").[6]

---

[6] The rationale underlying this approach is explained in a leading treatise:

> The vast majority of courts have concluded that, although the texts of § 2241 and § 2254 appear similar in their grant of jurisdiction, § 2254 is the exclusive avenue for a state prisoner challenging the constitutionality of his detention. Section 2254 is properly understood as in effect implementing the general grant of habeas corpus authority found in § 2241, even if the petitioner is not challenging the underlying state court conviction (e.g., challenges to parole determinations), so long as the person is in custody pursuant to the *judgment* of a state court. . . . If, however, the petitioner is in custody pursuant to something *other than a judgment* of a state court (e.g., pre-trial detention, pre-trial bond order, waiting extradition, or other forms of custody that are possible without a conviction), he may proceed under 28 U.S.C. § 2241.

Brian R. Means, Federal Habeas Manual §1:34 (June 2014) (emphasis in original).

In view of the foregoing, § 2241—upon which the Petition is premised—does not provide the appropriate legal authority for the relief sought. The Magistrate Judge's conclusion in this regard is therefore well founded. This would be sufficient grounds for dismissal of the Petition. However, because Smith is proceeding *pro se* and in the interests of addressing Smith's claims on the merits, the Court will construe the Petition as if it had been filed as a § 2254 petition.

### 2.       Merits of Petition

Smith is in custody pursuant to his Territorial (state) court conviction and sentence. Although housing him for the Virgin Islands Bureau of Corrections ("BOC"), the BOP had only physical custody over Smith. In *Ali v. Gibson*, 631 F.2d 1126 (3d Cir. 1980), Smith and his co-defendants challenged the BOC's authority to transfer them to BOP. The Third Circuit held that when the BOC Commissioner transferred the defendants to the care and control of the BOP, he still retained legal control over them and would always have the authority to order them "returned to the Virgin Islands at any time." *Ali*, 631 F.2d at 1131. Despite this nearly 40-year-old decision, Smith nonetheless persists in the claim that he should be immediately released for reasons that would clearly be inconsistent with the dictates of *Ali*.

First, Smith claims that the federal government "relinquished jurisdiction" when the BOP "stripped [him] of his federal prison number and discharged him from its custody" and then transferred him to the state of Virginia "[e]ven though there was never any legal basis for such." (Dkt. No. 1 at 2). In other words, Smith appears to argue that his transfer from federal custody back to state custody made him a free man. Smith is simply wrong.

While it is true that Smith's day-to-day confinement took place in federal facilities up until 2001, he was never a federal inmate, and neither the United States nor the BOP was responsible for administering his sentence. *See Gereau*, 526 F.2d at 891-94 (describing initial transfer arrangement). As the Magistrate Judge correctly noted, even though Smith had been physically

8

located in federal prisons, his "boarder" status meant that his custody was always under the constructive control of the Territory of the Virgin Islands. (Dkt. No. 21 at 9). *See Benjamin v. Potter*, 635 F. Supp. 243, 245 (D.V.I. 1986), *aff'd*, 838 F.2d 1205 (3d Cir. 1988) ("It is well established that a local prison authority remains responsible for the maintenance of its prisoners after they have been sent to a federal facility."). However, Smith has not demonstrated that, given his "boarder" status with the BOP, the 2001 transfer from the BOP to Virginia was anything other than a "garden variety prison transfer," which the Third Circuit has indicated does not give rise to a habeas claim. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 237 (3d Cir. 2005). All decisions related to whether Smith is eligible for, or should be granted, an early release remains with the Virgin Islands Parole Board. *See Colbeth v. Civiletti*, 516 F.Supp. 73, 76 (S.D. Ind. 1980) (explaining that "the Federal Government, who is merely the custodian, has no authority in the area of parole" for a state prisoner in federal custody pursuant to 18 U.S.C. § 5003). Thus, Smith's transfer from a federal to a state correctional facility did not terminate his sentence or render him free from Territorial custody.

Second, Smith claims that because the Government of the Virgin Islands "did not tr[y], convict, sentence, and imprison him" and was "never [his] primary custodian," he is being held illegally in a state prison. (Dkt. No. 1 at 3). Echoing this same contention in his Objections, Smith states:

> Petitioner's Legal claim is that the Federal government prosecuted, sentenced and committed him in Federal custody in 1973, and terminated his sentences in 2001 when he was discharged and release[d] from Federally imposed custody, so he is illegally being detained now, and he should be released immediately.

(Dkt. No. 29 at 2, ¶ 3; s*ee also* Dkt. No. 28 at 2 (Seitu's objections stating the same)). Smith seems to argue that, because he was tried, convicted, and sentenced in federal court and the federal government "relinquished jurisdiction" over him, there is no authority to hold him in a state prison.

9

Smith's position is both factually and legally inaccurate.

Although it is true that Smith was tried, convicted, and sentenced in the District Court, he was charged with *territorial* crimes by the *Government of the Virgin Islands*. *See generally* Amended Information, dated September 27, 1972; s*ee also* Judgment and Commitment entered August 13, 1973.[7] At the time of Smith's crimes, the District Court exercised broad jurisdiction over territorial crimes pursuant to the Revised Organic Act of 1954, which vested this Court with jurisdiction over all matters arising under local Virgin Islands law, except civil cases in which the amount in controversy was less than $500 and criminal cases in which the maximum punishment did not exceed six months in prison or a $100 fine. Act of July 22, 1954, ch. 558, 68 Stat. 506 (1954). Under this framework, this Court was "more like a state court of general jurisdiction than a United States district court." *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1057 (3d Cir. 1982). The local crimes with which Smith was charged were thus properly brought in the District Court on behalf of the Government of the Virgin Islands, and, after Smith's sentencing, he immediately was subject to the exclusive jurisdiction of the BOC. The BOC—as the territorial entity controlling Smith's imprisonment—thus had the authority to issue the initial transfer to the BOP pursuant to 18 U.S.C. § 5003(a)(1), and retained responsibility for administering his sentence. *See Benjamin*, 635 F. Supp. at 245; *Colbert*, 516 F. Supp. at 76; *see also McCain v. Webb*, 62 Fed. App'x. 596, 598 (6th Cir. Apr. 1, 2003) ("When one sovereign releases its prisoner to another for the purpose of the prisoner's serving a sentence there, it does not effectuate a loss of its jurisdiction over the prisoner." (internal citations omitted); *Cf. Lars v. Owen*, 2009 WL 1024608, at *3 (Apr. 15, 2009) (rejecting prisoner's argument "that the *federal* authorities lost jurisdiction over him when they

---

[7] Trial was pursuant to an Information filed in the District Court, as authorized by § 3 of the Organic Act, as revised by the Act of August 23, 1968, Pub. L. 90-496, § 11, 82 Stat. 841.

transferred him back to state custody after his sentencing in federal district court") (emphasis added).

Third, Smith claims that his 2001 transfer from federal custody back to state custody offends the Constitution and violates the Universal Declaration of Human Rights. (Dkt. No. 1 at 2-3). However, the Constitution does not confer any right upon an inmate to any particular custody or housing arrangement. *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular custodial status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed … and is not otherwise violative of the Constitution." *Id.* For example, inmate transfers to facilities far from their homes do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. *See, e.g., Gov't of V.I. v. Gereau*, 592 F.3d 192, 196 (3d Cir. 1979) (transfer from Virgin Islands to mainland). In short, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison or to any particular housing arrangement. *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano,* 427 U.S. 215, 225 (1976); *Montanye v. Haymes,* 427 U.S. at 242; *Bulger v. U.S. Bureau of Prisons,* 65 F.3d 48 (5th Cir.1995); *Marchesani v. McCune,* 531 F.2d 459 (10th Cir. 1976). As the Supreme Court explained in *Olim* "it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State." 461 U.S. at 248. Simply put, Smith has no constitutional right to choose his prison, and he fails to state a claim for any violation of a constitutional right based upon his transfer from a federal to a state facility.

Fourth, in his Objections, Smith adds a challenge to the Court's subject matter jurisdiction over the initial prosecution of this matter, claiming that the District Court lost jurisdiction over local matters in 1970 when the Virgin Islands was empowered to elect its own governor. (*See* Dkt. No. 29 at 5-6). As previously discussed, the District Court properly exercised jurisdiction over this local matter pursuant to the Revised Organic Act of 1954.

Finally, Smith asserts that in light of his release from the BOP, his illegal transfer, and the attendant constitutional violations, he is entitled to "immediate and unconditional release." (Dkt. No. 1 at 3). For the reasons discussed above, Smith's assertion is groundless.

In view of the foregoing, the Magistrate Judge's conclusion that there is no merit to Smith's claims and that they should be dismissed passes muster under either a plain error or *de novo* review. Accordingly, the R&R will be accepted and the Petition denied.

## IV. CERTIFICATE OF APPEALABILITY

The R&R did not refer to whether a Certificate of Appealability ("COA") should issue in this case. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. AEDPA limits the issuance of a certificate of appealability to circumstances where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); s*ee also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (explaining that movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). The Court is dismissing Smith's Petition after determining that his claims are meritless. The Court concludes that reasonable jurists would not find this assessment debatable or wrong. Accordingly, the Court will not issue a COA.

## V. CONCLUSION

Upon the Court's review of the record in this case, the Magistrate Judge's R&R is accepted

as modified herein. An appropriate Order accompanies this Memorandum Opinion.

Date:   January 24, 2020                              _____/s/_____
                                                      WILMA A. LEWIS
                                                      Chief Judge